916 F.2d 1444
 59 USLW 2342, 24 Collier Bankr.Cas.2d 952,
20 Bankr.Ct.Dec. 1868, Bankr. L. Rep. P 73,663
 In re CINEMATRONICS, INC., Debtor. (Two Cases)
Harold S. TAXEL, Trustee, Plaintiff,
v.
ELECTRONIC SPORTS RESEARCH, Defendant-third-party-plaintiff/Appellee,
v.
James PIERCE, Third-party-defendant/Appellant.
Harold S. TAXEL, Trustee, Plaintiff-Appellant,
v.
ELECTRONIC SPORTS RESEARCH, Defendant-Appellee.
 Nos. 89-55296, 89-55297.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1989.
Decided Oct. 22, 1990.
 
 Kevin J. Hoyt, Estes & Hoyt, San Diego, Cal., for plaintiff-appellant.
 Philip J. Giacinti, Jr., Procopio, Cory, Hargreaves & Savitch, San Diego, Cal., for defendant-appellee.
 Timothy D. Kelley, Rancho Santa Fe, Cal., for third party defendant-appellant.
 Appeal from the United States District Court for the Southern District of California.
 Before HUG, HALL and WIGGINS, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This interlocutory appeal was brought pursuant to 28 U.S.C. Sec. 1292(b) (1988). The district judge, 111 B.R. 902, considered this case to be a core bankruptcy proceeding in which there was a request for a jury trial. He denied the request to withdraw the action from the bankruptcy court, determining that jury trials on core bankruptcy matters may be held in bankruptcy courts.[1] We conclude that appellees' claims constituted noncore bankruptcy proceedings. We also find that appellant James Pierce had a Seventh Amendment right to a jury trial in the district court with regard to the noncore bankruptcy claims brought against him and that a bankruptcy court cannot conduct a jury trial in a noncore action. Therefore, we reverse the district court's order denying Pierce's motion for withdrawal of the claims against him and remand to the district court.
 
 I. Facts and Procedural Background
 
 2
 Cinematronics, Inc., a California corporation engaged in developing, manufacturing, and marketing video arcade games, filed for reorganization under Chapter 11 of the federal bankruptcy laws in September of 1982. Appellant Harold S. Taxel was appointed trustee of the bankruptcy estate. Appellant Pierce, the principal shareholder and president of Cinematronics, was authorized to continue as Cinematronics' chief operating officer. In May, 1984, Pierce met with Roland Colton, a representative of Electronic Sports Research ("ESR"), a California partnership. The men allegedly discussed the possibility of Cinematronics undertaking the design, manufacture and sale of a new baseball video arcade game, entitled "World Series: The Season." ESR alleges that Colton agreed to disclose his design concept to Pierce only after Pierce signed an agreement promising to keep the information confidential. According to ESR, Colton explained the game's secret design and later reached an agreement with Pierce for the payment of royalties by Cinematronics to ESR should Cinematronics use the design concept.
 
 
 3
 Ultimately, Pierce informed ESR that Cinematronics was not interested in using the design. In October 1985, however, ESR alleges that it discovered a baseball game being marketed by Cinematronics that incorporated ESR's confidential design concept. ESR filed in Illinois state court an action for damages and injunctive relief. On October 31, 1985, the state court issued a temporary restraining order that forbid the display of Cinematronics' baseball game at a particular trade show in Chicago.
 
 
 4
 Taxel responded by filing the present action in bankruptcy court, claiming that ESR's actions violated the automatic stay provisions of the bankruptcy code. See 11 U.S.C. Sec. 362(a) (1988). Taxel sought both preliminary and permanent injunctive relief. The bankruptcy court first restrained the Illinois court and ESR from proceeding with the Illinois action and then preliminarily enjoined ESR from interfering with Cinematronics' marketing of the video game. The state court action was later dismissed.
 
 
 5
 On November 12, 1985, ESR answered the complaint filed in bankruptcy court and asserted counterclaims against Taxel and third-party claims against Pierce. Against both Taxel and Pierce, ESR alleged claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud, (4) breach of fiduciary duty, (5) misappropriation of confidential information, and (6) unfair competition and business practice. In addition, Taxel was charged with negligence in his supervision of Pierce and Cinematronics. ESR sought both compensatory and punitive damages. Both ESR and Pierce submitted written demands for a jury trial regarding ESR's claims.
 
 
 6
 ESR moved the bankruptcy court under 28 U.S.C. Sec. 157(b)(3) (1988) for a determination that the claims by ESR qualified as noncore proceedings. ESR asserted that its claims relate to Cinematronics' Chapter 11 reorganization so unless the parties consent to final adjudication, the bankruptcy court could only recommend findings of fact and conclusions of law. See 28 U.S.C. Sec. 157(c)(1)(1988). Pierce offered no opposition to ESR's motion. Taxel, however, argued that the claims against the estate were core proceedings; thus, the bankruptcy court could issue a final and binding judgment.
 
 
 7
 On May 19, 1987, the bankruptcy court determined that the ESR claims were core proceedings because the claims arose postpetition and, if successful against the estate, would assume priority as administrative claims.[2] In addition, the bankruptcy court expressly held that ESR and Pierce had a right to jury trial on all issues arising from the ESR claims. Concerned that it lacked the authority to conduct a jury trial, the bankruptcy court recommended that the district court withdraw the reference for the ESR claims and conduct a jury trial. The bankruptcy court transmitted this recommendation in the form of a proposed order for withdrawal. All parties stipulated to the court's proposed withdrawal. Pierce then made an oral motion to the district court for withdrawal of the reference of the third-party complaint against him.
 
 
 8
 The district court denied Pierce's motion, concluding that bankruptcy courts have authority to conduct jury trials in core proceedings and that such trials conform to constitutional requirements. On Pierce's suggestion, however, the district court certified the order denying Pierce's motion as appropriate for immediate interlocutory appeal under section 1292(b). We granted permission for both Pierce and Taxel to appeal the order, and each party perfected an appeal under Fed.R.App.P. 5(d).
 
 II. Seventh Amendment Right
 
 9
 Taxel and Pierce maintain on appeal that they each were sued in their personal capacity and that satisfaction of their Seventh Amendment right requires the district court to withdraw the reference and to supervise a jury trial of the claims against them as individuals. ESR also maintains that it has a Seventh Amendment right to a jury trial on all issues arising from its claims against Taxel and Pierce but expresses indifference on the situs of the trial.
 
 
 10
 The bankruptcy court determined that Pierce had a Seventh Amendment right to a jury trial. The district court also agreed that Pierce had a right to a jury trial, however, it concluded that the trial could be held in the bankruptcy court. Without delving into the question of situs at this point in our discussion, we also find that Pierce has a Seventh Amendment right to a jury trial. See Granfinanciera, S.A. v. Nordberg, --- U.S. ----, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (analysis for determining whether a Seventh Amendment right to a jury trial exists).
 
 
 11
 We decline, however, to consider whether Taxel has a Seventh Amendment right that requires withdrawal of the reference and a jury trial in district court. Although Taxel stipulated to Pierce's motion for withdrawal of the reference, the record on appeal does not show that Taxel asserted his own Seventh Amendment right as a basis for withdrawal of the reference before bringing this present appeal. We, therefore, do not consider that issue on this interlocutory appeal. See Life Ins. Co. of N. Am. v. Reichardt, 591 F.2d 499, 506 (9th Cir.1979).
 
 
 12
 Because we will not consider Taxel's Seventh Amendment rights, we deem it proper to reconsider Taxel's standing to appeal under section 1292(b). See United States v. 5.96 Acres of Land, 593 F.2d 884, 887 (9th Cir.1979) (circuit court has discretion to reconsider the grant of permission to appeal under section 1292(b)). Ordinarily, "a party may only appeal to protect its own interests, and not those of a coparty," even though the outcome of the appeal may have some effect on the party. Libby, McNeill, & Libby v. City Nat'l Bank, 592 F.2d 504, 511 (9th Cir.1978). Reversal of the order denying Pierce's motion for withdrawal of the reference of the third-party complaint would depend entirely upon Pierce's Seventh Amendment rights, which Taxel has no standing to assert. We therefore dismiss Taxel's appeal as improvidently granted.
 
 
 13
 We also decline to consider any right to a jury trial that ESR may have because ESR does not challenge the situs of the trial. The focus of the present appeal is the propriety of the district court's order denying Pierce's motion for withdrawal.
 
 III. Scope of Section 1292(b) Review
 
 14
 The first hurdle we encounter is that the bankruptcy court concluded that ESR's claims against Pierce and Taxel were core proceedings within the meaning of 28 U.S.C. Sec. 157(b)(2)(A) and (B) (1988). Hence this interlocutory appeal is premised on that conclusion.
 
 
 15
 Pierce argues that the bankruptcy court mislabeled the claims as core. Further, he insists that we must review and reverse this bankruptcy court finding, even though it is not a certified issue on this interlocutory appeal. We agree.
 
 
 16
 Although section 1292(b) requires certification by the trial court of "controlling" questions of law, the appeals it authorizes are from orders not questions. See United States v. Stanley, 483 U.S. 669, 677, 107 S.Ct. 3054; 3060, 97 L.Ed.2d 550 (1987); Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976, 983 n. 16 (5th Cir.1985).[3] Thus, our review of the present controversy is not automatically limited solely to the question deemed controlling by the district court. We recognize that the scope of appellate review under section 1292(b) is not so broad as to allow reexamination of all matters previously ruled upon in the case. Stanley, 483 U.S. at 677, 107 S.Ct. at 3060. Nonetheless, we may address those issues material to the order from which appeal has been taken. Ducre, 752 F.2d at 983 n. 16.
 
 
 17
 Here, the bankruptcy court's earlier core determination is material to the order presently before us. The district judge's refusal to remove the ESR claims from the bankruptcy court was based largely on his analysis of the constitutional implications of allowing jury trial in core bankruptcy matters to be conducted by the bankruptcy courts. Whatever the merits of his position, it is undeniable that the constitutional analysis changes dramatically when noncore matters are involved, because the scope of the bankruptcy court's adjudicatory powers is much more circumscribed in the noncore context.[4] See Piombo Corp. v. Castlerock Properties (In re Castlerock Properties ), 781 F.2d 159, 161 (9th Cir.1986) (noting differences in bankruptcy judge's powers in core and noncore matters). Accordingly, the validity of the district court's decision, refusing to permit withdrawal, is inextricably tied to the bankruptcy judge's earlier ruling that ESR's claims constitute core bankruptcy proceedings.
 
 
 18
 In such a situation, where reconsideration of a ruling material to an order provides grounds for reversal of the entire order, review of issues other than those certified by the district court as "controlling" is appropriate. See Ducre, 752 F.2d at 983 n. 16. Therefore, we review the bankruptcy court's determination that the claims are core.
 
 IV. Core Determination
 
 19
 In 1984, Congress amended the bankruptcy code in response to the Supreme Court's decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding the broad jurisdictional grant given the bankruptcy courts under the 1978 Bankruptcy Act unconstitutional). The new structure is based upon the distinction between core and noncore bankruptcy matters:
 
 
 20
 In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. In noncore matters, the bankruptcy court may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law in noncore matters are subject to de novo review by the district court.... In contrast to the bankruptcy court's authority in noncore cases, the bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court. The standard for appeal of core matters of the district court is the same as in other civil matters appealed from the district court to the circuit courts of appeal. 28 U.S.C. Sec. 158(c).
 
 
 21
 Castlerock, 781 F.2d at 161 (quoting In re Production Steel, Inc., 48 B.R. 841, 844 (Bankr.M.D.Tenn.1985)).
 
 
 22
 Despite the importance of the core designation to bankruptcy adjudication, no exact definition of the term exists in the bankruptcy code. Rather, section 157(b)(2) contains a laundry list of core proceedings along with the admonition that core proceedings include, "but are not limited to," the items listed. See In re Mankin, 823 F.2d 1296, 1300 (9th Cir.1987), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988).[5]
 
 
 23
 We looked at the issue of classification in Castlerock. In that case Castlerock filed for Chapter 11, thereby automatically staying a state court contract action involving Castlerock and Piombo. Piombo filed for relief from the automatic stay, and Castlerock responded by filing an answer that incorporated state law contract counterclaims against Piombo. Castlerock, 781 F.2d at 160.
 
 
 24
 Castlerock held that state law contract claims, which did not fall within one of the enumerated core proceedings in 28 U.S.C. Sec. 157(b)(2)(B)-(N), are not core claims. We noted in Castlerock that even if the state law claims could arguably fall within the language of section 157(b)(2)(A) or (O), one of two broadly worded, catch-all provisions of the section, such claims should still not be deemed core. Id. at 162. In reaching this conclusion, we emphasized that courts "should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems." Id.
 
 
 25
 Here, the state law claims at issue are against Pierce, a nondebtor, in his individual capacity. The state law claims do not fit within one of the enumerated core categories and trying to fit the claim into a catch-all category may cause constitutional problems.[6] Therefore, under the Castlerock analysis the claims should have been labeled as noncore.
 
 
 26
 The bankruptcy court, however, held that the claim was a core proceeding pursuant to section 157(b)(2)(A) and (B). We disagree. The catch-all section, 157(b)(2)(A), describes as core "matters concerning the administration of the estate." The bankruptcy court expressed the view that claims arising from conduct connected with the estate after the Chapter 11 petition is filed concern the administration of the estate and qualify as core matters. See, e.g., L.A. Clarke & Son, Inc. v. Bullock Constr., Inc., 51 B.R. 31 (Bankr.D.D.C.1985). In Bullock Constr., however, the claims involved the debtor in possession. In the claims relevant to our inquiry, ESR seeks to collect damages from Pierce, as an individual and the debtor is not involved. A judgment against Pierce would not directly determine or adjust the relationship of the Cinematronics estate to its creditors. Thus, the relationship of the claims to the reorganization proceedings are attenuated. We find no clear expression of congressional intent to include within the catch-all categories of core proceedings state claims that relate to a bankruptcy proceeding but that exist against a nondebtor.
 
 
 27
 As for section 157(b)(2)(B), it defines core proceedings as the "allowance or disallowance of claims against the estate or exemptions from property of the estate, and [the] estimations of claims or interests for the purposes of confirming a plan." Here, the claims at issue are against Pierce, a nondebtor, in his individual capacity. The claims do not directly affect the estate or the confirmation of the estate's plan. Accordingly, we find that ESR's claims against Pierce are noncore.
 
 V. Jury Trials in Noncore Proceedings
 
 28
 Finally, we face the issue of whether bankruptcy courts may conduct jury trials in noncore proceedings where the parties have withheld unanimous consent to the entry of final judgment by the bankruptcy court.
 
 
 29
 We have already determined that Pierce has a Seventh Amendment right to trial by jury. The Seventh Amendment provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of common law." U.S. Const. amend. VII. The re-examination of jury findings allowed by the Seventh Amendment includes the post verdict review for sufficiency of the evidence or for a verdict against the greater weight of the evidence, which trial courts routinely conduct. Slocum v. New York Life Ins. Co., 228 U.S. 364, 379-80, 33 S.Ct. 523, 529-30, 57 L.Ed. 879 (1913). The Seventh Amendment does not allow another court's review of facts found by the jury with no standard of deference and with the authority to redecide those matters in the first instance. Id.
 
 
 30
 Accordingly, we find that grave Seventh Amendment problems would arise if a jury trial is conducted by the bankruptcy court, because section 157(c)(1) requires de novo review by the district court of noncore matters. See also Gibson, Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment, 72 Minn.L.Rev. 967, 1043-54 (1988) (contending jury trials in noncore proceedings cannot constitutionally be presided over by bankruptcy judges).
 
 
 31
 If the district courts refused to review bankruptcy court jury verdicts on noncore matters with the de novo standard, they would be acting contrary to express statutory mandate, see section 157(c)(1). Yet, if they reviewed the bankruptcy court verdicts de novo they would be at odds with the Seventh Amendment.[7] Faced with this problem, several courts have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate. See, e.g., In re Guenther, 65 B.R. 650, 652 (Bankr.D.Colo.1986); In re Northern Design, Inc, 53 B.R. 25 (Bankr.D.Vt.1985); Macon Prestressed Concrete Co. v. Duke, 46 B.R. 727, 730-31 (M.D.Ga.1985). See also Gibson, supra, at 1029 n. 294 (listing cases where withdrawal was deemed appropriate under such circumstances).
 
 
 32
 We agree with these courts and conclude that bankruptcy courts cannot conduct jury trials on noncore matters, where the parties have not consented.
 
 VI. Conclusion
 
 33
 Pierce has a right under the Seventh Amendment to a jury trial. ESR's claims are noncore proceedings in which bankruptcy courts have no authorization to conduct jury trials. The district court's decision whether cause justifies withdrawal is generally discretionary. Vreugdenhil v. Hoekstra, 773 F.2d 213, 215 (8th Cir.1985). Here, however, we find that the refusal to withdraw the referral to the bankruptcy court is an abuse of discretion.
 
 
 34
 REVERSED.
 
 
 
 [1]
 The Supreme Court has granted certiorari on this issue. See Insurance Co. of State of Pennsylvania v. Ben Cooper, Inc., 896 F.2d 1394 (2d Cir.), cert. granted, --- U.S. ----, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990)
 
 
 [2]
 As noted, the Supreme Court granted certiorari in Insurance Co. of the State of Pennsylvania v. Ben Cooper, Inc., --- U.S. ----, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990). One of the issues in Cooper is whether a state law contract claim against a debtor-in-possession, where the contract was entered into post-petition, is a core proceeding under section 157. Our case is distinguishable because the claims at issue are against Pierce, a nondebtor, not against the debtor
 
 
 [3]
 See also Interlocutory Appeals in the Federal Courts Under 28 U.S.C. Sec. 1292(b), 88 Harv.L.Rev. 607, 628-29 (1975)
 
 
 [4]
 See also Gibson, Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment, 72 Minn.L.Rev. 967, 1043, 1054 (1988) [hereinafter Gibson] (noting constitutional distinction between core and noncore matters when the right to trial by jury is involved)
 
 
 [5]
 Courts attempting to analyze the status of a particular claim that is not listed in section 157(b)(2) have considered factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case. See, e.g., In re World Solar Corp., 81 B.R. 603 (Bankr.S.D.Cal.1988); In re Commercial Heat Treating, Inc., 80 B.R. 880, 888 (Bankr.S.D.Ohio 1987)
 
 
 [6]
 ESR's claims do not fit into one of the enumerated core categories. The claims are not orders to obtain credit or turn over property; they are not claims to avoid preferences; they are not claims to determine dischargeability, priority or validity of liens; and they are not claims to approve a plan or approve a lease. See 28 U.S.C. Sec. 157(b)(2)(B)-(N). The claims also do not fit into the second catch-all, section 157(b)(2)(O), because the claims are not about the liquidation of the estate
 
 
 [7]
 See Mankin, 823 F.2d at 1302-06, (discussing Northern Pipeline and noting that the exercise of federal judicial power by a non-Article III officer may be problematic where rights involved are not public rights and non-Article III officer is not acting as an adjunct to an Article III court); see also Gibson, supra, at 1053 (noting "most fundamental problem caused by authorizing bankruptcy judges to conduct jury trials in [noncore] cases requiring an [A]rticle III judge is that, in exercising this power, the bankruptcy judge crosses the hazy line separating adjunct and judge")