In re **PRIVATE CAPITAL PARTNERS, INC., Debtor.**

**PRIVATE CAPITAL PARTNERS, INC., Plaintiff,**

v.

**RVI GUARANTY CO., INC. and US West Financial Services, Inc., Defendants.**

**Bankruptcy No. 91 B 21573.**
**No. 92 ADV. 5003.**

United States Bankruptcy Court, S.D. New York.

April 27, 1992.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C., Garden City, N.Y., for plaintiff.

Miller & Wrubel, P.C., New York City, for defendants.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor, Private Capital Partners, has brought this adversary proceeding against RVI Guaranty Co., Ltd. ("RVI") and US WEST Financial Services ("USWFS") to recover fees incurred by the defendants for investment banking services the debtor performed in connection with USWFS's acquisition of RVI. The defendants, RVI and USWFS, have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 as incorporated by Bankruptcy Rule 7056 on each of the debtor's three claims for such investment banking fees.

The debtor alleges that under certain contracts, RVI owes the debtor a $300,-000.00 fee which became due when RVI met its first year gross revenue projection and $500,000.00 for additional investment banking services the debtor rendered to RVI after the transaction was completed. The debtor also seeks payment of the $500,000.00 investment banking fee from USWFS on the ground that either USWFS was a direct obligor to the debtor on the $500,000.00 portion of the fee or guaranteed payment of that fee by RVI.

The defendants have moved for summary judgment as to each of the debtor's three claims. First, RVI argues that the $300,000.00 fee is a finder's fee and is rendered unenforceable because there is no writing signed by RVI as required under New York General Obligations Law § 5-701. Second, RVI claims that it does not owe the $500,000.00 additional investment banking services fee because such services were never performed. As to the debtor's third claim, which is against USWFS, USWFS argues that it is not liable on the alleged guaranty of $500,000.00 because the services were not performed, and in any event, the debtor did not reduce the guaranty to writing as required by New York General Obligations Law § 5-701(a)(2).

## BACKGROUND

On October 10, 1991, the debtor filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and was continued in management and possession of its property and business in accordance with 11 U.S.C. §§ 1107 and 1108. The debtor is engaged in the business of investment banking.

On or about September 6, 1989, the debtor and RVI entered into a letter agreement (the "Letter Agreement") confirming the debtor's appointment as the exclusive financial advisor and placement agent to RVI. RVI is a property and casualty insurer, specializing in residual value insurance of high quality assets. Pursuant to the Letter Agreement, the debtor was engaged to prepare a private placement offering (the "Offering") to raise between $20,-000,000.00 and $50,000,000.00 in the form of equity, convertible preferred stock or other financial instruments.

Pursuant to the Letter Agreement, the debtor was to receive a fee equal to 3½% of the amount raised by the debtor on behalf of RVI and was to be paid in a manner to be outlined in the Offering. On October 20, 1989, the debtor prepared the Offering. However, the Offering did not specify the manner or amount which the debtor was to be paid. The debtor concedes this point. *Debtor's Rule 13(h) Statement*, at 1.

The debtor contends that in January of 1990, prior to the closing of the RVI/USWFS transaction, Howard Chickering ("Chickering"), the President of RVI, advised Gerald H. Houghton ("Houghton"), an Executive Vice–President of the debtor, that RVI refused to proceed if the debtor's entire $1,750,000.00 fee was to be paid at the closing of the RVI/USWFS transaction. *Affidavit of Gerald H. Houghton*, at 4. The debtor claims that Houghton entered into an oral agreement with Chickering such that the debtor's investment banking fee of $1,750,000.00 was payable as follows: (a) the sum of $950,000.00 payable upon closing of the Offering on January 19, 1990; (b) the sum of $300,000.00 on the date that RVI met its first year gross revenue projection of $5,088,055.00, as reflected in the Offering; and (c) the sum of not less than $500,000 for additional investment banking services to be rendered by the debtor to RVI during 1990.

On January 19, 1990, Houghton advised the law firm drafting the closing documents that provisions (b) and (c) above of the oral agreement should be incorporated into the closing documents for the RVI/USWFS transaction. The debtor contends that this information was incorporated in a Schedule of Liabilities to the RVI/USWFS Acquisition Agreement (the "Acquisition Agreement") under which USWFS acquired all of the stock of RVI. On February 1, 1990, the closing took place and RVI paid the debtor $950,000.00. *Houghton Affidavit*, at 5.

The debtor takes the position that the Schedule of Liabilities should be read together with the debtor's letter of January 19, 1990 such that RVI is obligated to pay the debtor the $300,000.00 portion of the fee. The debtor also claims that on or about January 19, 1990, USWFS guaranteed payment of the $500,000.00 portion of the fee to the debtor, although no written guaranty was ever entered into between RVI and USWFS.

The debtor also argues that RVI and USWFS acknowledged their obligation to pay the $500,000.00 portion of the fee in a letter agreement dated February 1, 1990 (the "Additional Services Agreement"). Both RVI and USWFS signed this Additional Services Agreement, which reads as follows:

This letter sets forth our understanding that, in consideration for your agreement to forego $500,000.00 in fees for investment banking services rendered in connection with the investment by US WEST Financial Services, Inc. in our common stock and preferred stock, we and US WEST Financial Services, Inc. agree to make all reasonable efforts in good faith to provide you with fee income of $500,000.00 or more by discussing first with you where appropriate possible retention for investment banking services required by us or US WEST Financial Services, Inc. and by recommending and referring you to third parties who may require investment banking services of a type provided by you.

Sincerely,

RVI Guaranty, Ltd.

By: s/Howard Chickering, Pres.

ACKNOWLEDGED

US WEST FINANCIAL SERVICES, INC.

By: s/Robert Pinkerton, VP

*Additional Services Agreement*, attached as Exhibit 4 to *Houghton Affidavit.*

The defendants' disagree with the debtor's version of the fee arrangement. The defendants claim that USWFS refused to purchase RVI's stock pursuant to the fee structure set forth in the Letter Agreement, not that USWFS and RVI simply wanted to defer the payment of the fees. Therefore, to close the deal, the defendants claim the Letter Agreement was vacated. In the alternative, the defendants argue that "the Letter Agreement only provides

for a percentage fee and does not refer to the $300,000.00 fee or $500,000.00 fee alleged in the Complaint." *Defendants' Memorandum of Law,* at 7 n. 2. As to the $300,000.00 portion of the fee, RVI argues that because the Letter Agreement was vacated and because RVI did not sign the Offering, the debtor must rely on the alleged oral agreement between Chickering and Houghton, which is unenforceable under New York General Obligations Law § 5–701(a). Even if the oral agreement were valid or the Letter Agreement had not been vacated, RVI contends that there never was an agreement that RVI would have to pay the $300,000.00 portion of the fee if RVI did not meet its 1990 projections in 1990, regardless of whether RVI achieved such revenue projections in 1991. *Reply Affidavit of Chickering,* at 2. RVI argues that the debtor's claim for an additional $500,000.00 investment banking fee has no merit because the services were never performed.

USWFS contends that the debtor's claim for $500,000.00 against it based on a theory that USWFS guaranteed RVI's payment of that amount is meritless as a matter of law because the debtor offers no writing setting forth this guaranty. Therefore, under section 5–701(a)(2) of the New York General Obligations Law, the guaranty is unenforceable. With regard to the debtor's argument that both are obligated to the debtor as a result of the Additional Services Agreement, USWFS argues, as does RVI, that they are not primarily liable to the debtor because the services were never performed.

The debtor claims that on or about May 1, 1991, RVI reached its first year gross revenue projection of $5,088,055.00, triggering payment of the $300,000.00 portion of the fee from RVI. The debtor further states that it performed services for RVI and USWFS after February 2, 1990 and therefore is entitled to the $500,000.00 additional fee.[1] The debtor has requested payment of both the $300,000.00 and $500,-000.00 portions of the fee from RVI and

the $500,000.00 portion from USWFS. Both RVI and USWFS have refused to pay the debtor these portions of the fees the debtor alleges are now due and owing.

The Letter Agreement contains a provision requiring the application of New York law to resolve disputes concerning that agreement.

## DISCUSSION

### *Summary Judgment*

RVI and USWFS have moved for summary judgment under Federal Rule of Civil Procedure 56, which is made applicable to this adversary by Bankruptcy Rule 7056. In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

■ This is a case in which the plaintiff's counsel has attempted to refine the issues to be decided by including new causes of action in its memoranda of law in opposition to the defendants' motion for summary judgment. Such practice is contrary to the

---

1. The debtor claims that it was prevented from performing additional services for the defendants because of the defendants' bad faith repudiation of the February 2, 1990 Acquisition Agreement. *Debtor's Rule 13(h) Statement,* at 2.

Federal Rules of Civil Procedure applicable in this adversary proceeding. *See, e.g., Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (a brief in response to a motion for summary judgment cannot amend a complaint); *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y.1989) (The plaintiff's statements regarding an alleged security fraud "encompass a level of particularity that does not exist in the Complaint and it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)); *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 526 (S.D.N.Y.1977) ("It is true that counsel for the plaintiff makes the necessary averment in his memorandum of law, but a party is not entitled to amend his pleading through statements in his brief.")

█ The procedure for amending or supplementing pleadings is governed by Rule 15(a), which in this case would allow the plaintiff to amend its complaint only by leave of court or by written consent of the adverse party because the instant defendants have filed an answer. Fed.R.Civ.P. 15(a). To the extent that the plaintiffs have asserted causes of action in their memoranda not present in their complaint, the plaintiff is granted leave to amend its complaint to include such causes of action. Courts will permit amendment of pleadings for virtually any purpose, including to add claims, alter legal theories or request different or additional relief. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Jones v. New York City Human Resources Admin.*, 539 F.Supp. 795, 801 (S.D.N.Y.1982). However, the defendants' motion for summary judgment on those causes of action asserted in the complaint will now be considered.

### The Debtor's Claim Against RVI for $300,000.00

█ Under the debtor's first cause of action against RVI, it seeks $300,000.00 based on RVI's breach of the terms of the Offering. Specifically, the debtor claims that the Offering called for a $300,000.00 payment by RVI on the date that RVI met its first year gross revenue projection of $5,088,055.00. The debtor alleges that on or about May 1, 1991, RVI reached. this figure. Because the Offering contained no such terms, the defendants' motion for summary judgment is granted as to this claim.

The court grants the debtor leave to amend its complaint to include a claim against RVI for the balance of the original $1,750,000.00 not received at the closing of the RVI/USWFS transaction. Should the alleged modification of the Letter Agreement of September 6, 1989 be ineffective, the Letter Agreement may be a basis for such a claim. Moreover, the debtor is granted leave to amend its complaint to include a claim as to the $300,000.00 fee based on the theory that there are two documents in writing that allegedly satisfy the Statute of Frauds with regard to this item, namely the Letter Agreement of September 6, 1989 and the Schedule of Liabilities accompanying the Acquisition Agreement. These documents are referred to in the debtor's memoranda of law, whereas the complaint is bottomed on the Offering, which does not support the claimed $300,000.00 fee.

### The Debtor's Claim Against RVI for $500,000.00

█ In its complaint, the debtor seeks $500,000.00 from RVI on the theory that RVI breached the Letter Agreement of September 6, 1989. The debtor contends that it has performed the services for RVI and has requested payment, but has not been paid. The Letter Agreement, however, makes no provision for a $500,000.00 fee, but rather, only provides for a $3\frac{1}{2}\%$ fee based on the entire amount of money the debtor raised. The form of payment was to be outlined in the Offering and the debtor concedes that this information was not contained in the Offering.

The debtor in its memoranda in opposition to the defendants' motion for summary judgment now asserts a new cause of action to recover $500,000.00 from RVI. The new cause of action is based on a breach of the the Additional Services Agreement, a contract not mentioned in the complaint. Under this theory, the debtor asserts that by signing the Additional Services Agreement, RVI agreed "to make all reasonable efforts in good faith" to provide the debtor with $500,000.00 of investment banking services and "to refer" the debtor third parties who may require such investment banking services. *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment*, at 8. The debtor now attempts to claim that RVI breached the Additional Services Agreement because RVI failed to discuss possible transactions in good faith. This claim is one for fees involving services for which RVI itself failed to retain the debtor or to refer the debtor to others. This claim suggests a different cause of action for a different injury not in the debtor's complaint. Therefore, the defendants' motion for summary judgment with regard to the debtor's claim for $500,000.00 based on the breach of the Letter Agreement is granted. The debtor is given leave to amend its complaint to include a claim against RVI based on breach of the Additional Services Agreement.

### The Debtor's Claim Against USWFS for $500,000.00

■ Initially, the debtor claimed that USWFS was liable, as guarantor, for $500,000.00 for additional investment banking services rendered after the closing of the RVI/USWFS transaction. *Complaint*, at ¶ 24. However, the debtor has failed to offer any written document evidencing such a guaranty. New York General Obligations Law § 5–701(a)(2) specifically provides:

(a) Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

. . . .

(2) Is a special promise to answer for the debt, default or miscarriage of another person.

N.Y.Gen.Oblig.Law § 5–701(a)(2) (McKinney 1989). Without a written guaranty agreement, the debtor's claim based on a guaranty theory must be denied because the claim is barred by the Statute of Frauds as a matter of law. *England Strohl/Denigris, Inc. v. Weiner*, 538 F.Supp. 612, 614 (S.D.N.Y.1982), *aff'd*, 740 F.2d 954 (2d Cir.1984).

■ The debtor also argues that USWFS is liable, as a primary obligor along with RVI, for the $500,000.00 portion of the fee pursuant to the Additional Services Agreement. *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment*, at 11. However, the only claim the debtor asserted against USWFS in the complaint was the claim that USWFS had guaranteed payment by RVI of the $500,000.00 portion of the fee for services in connection with the transaction.

Consequently, the debtor's claim that USWFS breached the terms of the Additional Services Agreement is insufficient for the same reason that claim cannot at this stage in the pleadings be decided as against RVI, namely because that cause of action was not asserted in the complaint. Accordingly, the defendants' motion for summary judgment with regard to the debtor's claim for $500,000.00 against USWFS pursuant to the Letter Agreement of September 6, 1989 is granted. The debtor is given leave to amend its complaint to include a claim against USWFS based on the breach of the Additional Services Agreement.

### Non–Core Proceeding

■ The defendants' claim that the debtor's causes of action should be characterized as non-core proceedings in accordance with 28 U.S.C. § 157(c), citing *Ben Cooper, Inc. v. The Insurance Co. of the State of Pennsylvania (In re Ben Cooper)*, 896 F.2d 1394 (2d Cir.), *vacated and remanded*, —— U.S. ——, 111 S.Ct. 425, 112

L.Ed.2d 408 (1990), *superseded,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The *Ben Cooper* case is not controlling in the instant case because we are here dealing with a prepetition contract claim. *Ben Cooper* stands for the proposition that a post-petition contract claim implicates an essential part of administering the bankruptcy estate, and therefore, is a core proceeding. On the other hand, it is settled law in this court that a garden variety prepetition breach of contract case invokes no substantive principles of bankruptcy law and is a non-core proceeding. *In re Thomson McKinnon,* 1991 WL 263144 (Bankr. S.D.N.Y. Dec. 13, 1991), *aff'd,* (S.D.N.Y. Jan. 28, 1992); *In re Wills Motors, Inc.,* 131 B.R. 263 (Bankr.S.D.N.Y.1991); *In re Golden Distributors, Ltd.,* 128 B.R. 342 (Bankr.S.D.N.Y.1991); *In re J.T. Moran Financial Corp.,* 119 B.R. 447 (Bankr. S.D.N.Y.1990). Accordingly, this adversary proceeding will be treated as a non-core proceeding, which will require proposed findings of fact and conclusions of law if it is to be tried in the bankruptcy court.

The court is surprised that the defendants, rather than the plaintiff, argued that this adversary proceeding is a non-core proceeding, especially in light of the defendants' demand for a jury trial. It appears that the defendants either misunderstand the theory of jury trials in bankruptcy cases or they do not seriously expect that their demand for a jury trial has much vitality. Manifestly, the courts universally hold that there is no right to a jury trial in non-core proceedings because the district court must review the bankruptcy court's proposed findings of fact and conclusions of law on a *de novo* basis. *Ben Cooper,* 896 F.2d. at 1403; *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.),* 916 F.2d 1444, 1451 (9th Cir.1990); *Beard v. Braunstein,* 914 F.2d 434, 445 (3d Cir.1990); *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 911 F.2d 380, 389–92 (10th Cir.1990); *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449, 1454–57 (8th Cir.1990). Nonetheless, the issue as to the defendants' right to a jury trial has not been submitted to the court. Therefore, this issue will not be addressed at this time. As Scarlet O'Hara said in *Gone With The Wind,* "Tomorrow is another day."

## PROPOSED CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). The debtor's suit against RVI and USWFS is a non-core proceeding within the meaning of 28 U.S.C. § 157(c)(1). This is a civil proceeding which neither arises under title 11 nor arises in a case under title 11, but is related to a case under title 11, as authorized under 28 U.S.C. § 1334(b). Accordingly, the proposed conclusions of law are submitted to the district court for a final order or judgment to be entered by the district court after considering the proposed conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected as expressed in 28 U.S.C. § 157(c)(1).

2. The defendants' motion for summary judgment should be granted as to the debtor's first claim for $300,000.00. The debtor should be given leave to amend its complaint to include a claim for $300,000.00 based on the Schedule of Liabilities accompanying the Acquisition Agreement and any other documents allegedly satisfying the Statute of Frauds.

3. The defendants' motion for summary judgment should be granted as to the debtor's second claim for $500,000.00. The debtor should be granted leave to amend its complaint to include a claim for $500,-000.00 based on the Additional Services Agreement and any other documents allegedly satisfying the Statute of Frauds.

4. The debtor should be given leave to amend its complaint to include a claim for $800,000.00 based on a breach of the Letter Agreement of September 6, 1989.

5. The defendants' motion for summary judgment with regard to the debtor's claim for $500,000.00 against USWFS is granted. The debtor should be given leave to amend

its complaint to include a cause of action against USWFS based on the Additional Services Agreement and the claim that USWFS is primarily liable for this amount.