**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ICTSI OREGON, INC., an Oregon corporation, *Plaintiff-Appellee*, <br><br> v. <br><br> INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 8, *Defendants-Appellants*. | No. 20-35818 <br><br> D.C. No. 3:12-cv-01058-SI |

| | |
|---|---|
| ICTSI OREGON, INC., an Oregon corporation, *Plaintiff-Appellant*, <br><br> v. <br><br> INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 8, *Defendants-Appellees*. | No. 20-35819 <br><br> D.C. No. 3:12-cv-01058-SI <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted December 1, 2021
Portland, Oregon

Filed January 18, 2022

Before:  Diarmuid F. O'Scannlain, Richard R. Clifton, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Labor Law / Appellate Jurisdiction

The panel dismissed, for lack of jurisdiction under 28 U.S.C. § 1292(b), an appeal and a cross-appeal from the district court's order addressing post-judgment motions following a jury verdict in favor of an employer on its claim that a union engaged in an illegal secondary boycott at the Port of Portland.

The jury returned a verdict for more than $93.5 million for plaintiff ICTSI Oregon, Inc. Defendant International Longshore and Warehouse Union ("ILWU") moved for judgment as a matter of law and new trial or remittitur. The district court denied outright the motion for new trial as to

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

liability and also as to damages but conditioned its denial on ICTSI's acceptance of remittitur to $19 million. ICTSI rejected remittitur of damages. The district court denied all other motions.

The district court granted ILWU's motion for certification of its post-trial order for interlocutory appeal under 28 U.S.C. § 1292(b). The district court found that the jurisdictional requirements of § 1292(b) were satisfied by two questions: whether the district court correctly interpreted *Mead v. Retail Clerks Int'l Ass'n, Loc. Union No. 839*, 523 F.2d 1371 (9th Cir. 1975), in assigning ILWU the burdens of proving apportionment and divisibility of damages; and whether ICTSI lost its status as a secondary employer by entangling itself in the dispute between ILWU and the Port. On appeal, ILWU challenged the district court's denial of judgment as a matter of law and the jury instructions. On cross-appeal, ICTSI challenged the district court's grant of a new trial conditioned on remittitur.

The panel held that the court of appeals may assert jurisdiction over an interlocutory appeal under § 1292(b) if two requirements are met. First, the district court must certify its order for appeal. To do so, it must determine that the order rests on a controlling question of law, there are substantial grounds for differences of opinion as to that question, and an immediate resolution may materially advance the termination of the litigation. Second, the court of appeals must agree that the requirements of § 1292(b) are met. Even when the court of appeals has jurisdiction over an issue under § 1292(b), it enjoys broad discretion to refuse to accept it.

The panel held that the question on which ILWU relied was not a question of law because the parties' dispute about

whether ICTSI became a primary employer under the circumstances of this case was a question of fact. The panel concluded that the *Mead* question was not addressed in the four corners of the certified post-judgment order and was not "material" to that order. The panel held that it therefore lacked jurisdiction under § 1292(b), and it dismissed the appeal and the cross-appeal.

**COUNSEL**

Dan Jackson (argued), Susan J. Harriman, and Brook Dooley, Keker Van Nest & Peters LLP, San Francisco, California, for Defendants-Appellants/Cross-Appellees.

Michael T. Garone (argued), Andrew J. Lee, Jeffrey S. Eden, and Amanda T. Gamblin, Schwabe, Williamson & Wyatt PC, Portland, Oregon; Carter G. Phillips, Sidley Austin LLP, Washington, D.C.; for Plaintiff-Appellee/Cross-Appellant.

Kevin J. Marrinan and John P. Sheridan, Marrinan & Mazzola Mardon P.C., New York, New York, for Amicus Curiae International Longshoremen's Association.

Michael E. Kenneally and Jonathan C. Fritts, Morgan Lewis & Bockius LLP, Washington, D.C., for Amicus Curiae Pacific Maritime Association.

Klaus H. Hamm, Klarquist Sparkman LLP, Portland, Oregon; Catherine L. Fisk, Berkeley. California; for Amicus Curiae 11 Scholars and Professors of Labor History, Labor Law and the Constitution.

E. Joshua Rosenkranz, Alyssa Barnard-Yanni, and Cesar A. Lopez-Morales, Orrick Herrington & Sutcliffe LLP, New York, New York; Daryl and Stephanie A. Maloney, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

**OPINION**

O'SCANNLAIN, Circuit Judge:

This case arises out of the high-profile labor dispute that led to the closing of Terminal 6 of the Port of Portland to ocean-going cargo for more than a year.

I

A

On the west coast of the United States, the work of loading and unloading containers on and off international ocean-going vessels is typically performed by members of local unions affiliated with International Longshore and Warehouse Union ("ILWU National"). *Shipowners' Ass'n of the Pac. Coast*, 7 NLRB 1002, 1007–14 (1938). Some of the containers are refrigerated and are known as "reefers." While a reefer is off the vessel, it must be connected to a power source to maintain refrigeration. Handling reefers while they are off the vessels is known as "reefer work." Under the collective-bargaining agreement between ILWU National and Pacific Maritime Association ("PMA"), when a PMA member has the right to assign reefer work, it must assign it to a union affiliated with ILWU National.

Before 2010, the Port of Portland ("the Port"), not a PMA member, had been assigning reefer work to members of International Brotherhood of Electrical Workers ("IBEW"), a different union. In 2010, marine terminal operator ICTSI Oregon, Inc. ("ICTSI"), a PMA member, leased Terminal 6 from the Port. However, under the lease, the Port retained control over the reefer work and continued assigning it to members of IBEW.

In 2012, upset by this arrangement, ILWU National and its affiliate, International Longshore and Warehouse Union Local 8 (collectively "ILWU") engaged in high-profile work stoppages, slowdowns, and other coercive activity at Terminal 6. *See, e.g.*, Richard Read, *Port of Portland's Troubled Terminal 6 Shuts for Second Day in a Row, Following Altercation*, The Oregonian (Mar. 5, 2014, 8:30 p.m.), https://www.oregonlive.com/business/2014/03/t roubled_port_of_portland_cont.html. The ocean-going cargo traffic ceased for more than a year. By 2017, ILWU's actions forced ICTSI to buy back the remainder of its lease from the Port and to leave Terminal 6.

B

1

In response to these actions, ICTSI filed charges against ILWU with the National Labor Relations Board ("NLRB"). The Administrative Law Judge ("ALJ") found that ICTSI was a neutral, or secondary employer for purposes of the reefer dispute because the dispute was between the Port and ILWU. *ILWU*, 363 NLRB No. 47 (Nov. 30, 2015); *ILWU*, 363 NLRB No. 12 (Sept. 24, 2015). Based on this finding, the agency held that, between May 2012 and August 2013, ILWU violated 29 U.S.C. § 158(b)(4)(B), prohibiting unions from interfering with secondary employers (ICTSI) with the

purpose of coercing them into pressuring primary employers (the Port) to satisfy unions' (ILWU) demands (assignment of reefer work). *ILWU*, 363 NLRB No. 47; *ILWU*, 363 NLRB No. 12. The DC Circuit affirmed. *ILWU v. NLRB*, 705 F. App'x 3, 4 (D.C. Cir. 2017); *ILWU v. NLRB*, 705 F. App'x 1, 2–3 (D.C. Cir. 2017).

2

In this action, ICTSI seeks damages from ILWU for its violation of § 158(b)(4)(B). Before trial, interpreting this court's decision in *Mead v. Retail Clerks Int'l Ass'n, Loc. Union No. 839*, 523 F.2d 1371 (9th Cir. 1975), the district court assigned ICTSI the burden of proving three elements: (1) "[ILWU] engaged in . . . coercive job activity;" (2) "[o]btaining the reefer work was a substantial factor motivating that coercive activity, making it unlawful secondary activity;" and (3) "unlawful secondary activity was a substantial factor in causing ICTSI's damages." In turn, ILWU was allocated the burden of showing that ICTSI's damages were attributable to other factors, such as lawful labor activity or outside causes, like lower customer demand. Further, if ILWU prevailed in showing that other factors caused ICTSI's damages, it would have to show that the damages caused by its unlawful conduct and those other factors could be divided.

After a ten-day trial, the jury returned a verdict for more than $93.5 million for ICTSI. Among other findings, the jurors concluded that all of ILWU's actions were unlawful and that those actions were the sole cause of ICTSI's damages. Accordingly, they did not reach the issue of divisibility.

Later, ILWU moved for judgment as a matter of law ("JMOL") and new trial or remittitur. It argued that ICTSI

failed to carry its burden of proof as to liability and damages. The court denied outright the motion for new trial as to liability and also as to damages but conditioned its denial on ICTSI's acceptance of remittitur to $19 million. ICTSI rejected remittitur of damages. The court denied all other motions.

Then, ILWU filed a motion asking the district court to certify its post-trial order for interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted such motion. It found that two questions satisfied the jurisdictional requirements of that section. The first question was whether the district court "correctly interpreted *Mead*" when it assigned ILWU the burdens of proving apportionment and divisibility of damages. The second was whether "ICTSI lost its status as a 'secondary employer'" by entangling itself in the dispute between ILWU and the Port.

### 3

In this Court, ILWU filed a petition for permission to appeal the certified order as required for interlocutory appeal jurisdiction under § 1292(b). ICTSI filed an answer opposing ILWU's petition and, in the alternative, asking us for permission to cross-appeal. A motions panel of this Court granted permission to ILWU to appeal and to ICTSI to cross-appeal.

On this interlocutory appeal, ILWU challenges the district court's denial of JMOL and the jury instructions. On cross-appeal, ICTSI challenges the district court's grant of new trial conditioned on remittitur.

## II

As a threshold matter, we must decide if we have jurisdiction to hear this case. ILWU argues that the two questions identified by the district court satisfy the requirements for interlocutory appeal under § 1292(b) and, thus, grant us jurisdiction.

## A

We tackle the second issue first. ILWU argues that the question of whether "ICSTI [sic] entangled itself in the 'vortex' of ILWU's dispute with the Port . . . to such a degree that ICTSI lost its status as a 'secondary employer'" satisfies the hallmarks of § 1292(b). We must decide whether ILWU has stated a question of law.

### 1

Under 28 U.S.C. § 1292(b) parties may take an interlocutory appeal when "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *see also U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam). Broadly, there are two requirements that must be met before we can assert jurisdiction over an interlocutory appeal.

#### a

The first jurisdictional requirement is that the district court must certify its order for appeal. To do so, it must determine that the order meets the three certification requirements outlined in § 1292(b): "(1) that there be a controlling question of law, (2) that there be substantial

grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981).

A controlling question of law must be one of law—not fact—and its resolution must "materially affect the outcome of litigation in the district court." *Id.* at 1026; *see also Northwestern Ohio Adm'rs v. Walcher & Fox*, 270 F.3d 1018, 1023 (6th Cir. 2001) ("Because this is an interlocutory appeal, we have no authority to review the district court's findings of fact, but must confine our review to . . . questions of law."); *Clark-Dietz & Assocs.-Eng'rs v. Basic Const.*, 702 F.2d 67, 69 (5th Cir. 1983) ("[F]act-review questions [are] inappropriate for § 1292(b) review.").

The "substantial grounds" prong is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). For example, this prong is satisfied if "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). However, the district court need not "await[] development of contradictory precedent" before concluding that the question presents a "substantial ground for difference of opinion." *Reese*, 643 F.3d at 688.

Finally, the "materially advance" prong is satisfied when the resolution of the question "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *In re Cement*, 673 F.2d at 1027. As to the

timing of certification, the district court may certify the order for interlocutory appeal in the text of that order or in a separate order, known as the certification order. *In re Benny*, 812 F.2d 1133, 1136–37 (9th Cir. 1987).

b

The second jurisdictional requirement is that the party seeking appeal must make an "application . . . [to this court] within ten days after the entry of the [certification] order." 28 U.S.C. § 1292(b). The clock starts ticking from the moment the district court certifies the order, and not from the moment the order is issued. *In re Benny*, 812 F.2d at 1137. Typically, a motions panel of this court will then decide whether to grant or deny the application. *See, e.g.*, *Reese*, 643 F.3d at 688; *Couch*, 611 F.3d at 632; *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–19 (9th Cir. 1996). If the application is granted, the case will be assigned to a merits panel.

The merits panel then must agree that the requirements of § 1292(b) are met. "The opinion of the district judge that a controlling question is involved, while deserving of careful consideration, is not binding upon this court . . . ." *United States v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 1959). Similarly, although we "[do] not lightly overturn a decision made by a motions panel during the course of the same appeal, we do not apply the law of the case doctrine . . . strictly in that instance." *United States v. Houser*, 804 F.2d 565, 568 (9th Cir. 1986), *abrogated on other grounds by Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–817 & n.5 (1988); *see also Kuehner*, 84 F.3d at 318–19.

c

Even when this court has jurisdiction over an issue under § 1292(b), it enjoys broad discretion to refuse to accept it. "[T]he appellant . . . 'has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Coopers*, 437 U.S. at 475. Although there is little guiding that discretion in the text of § 1292(b) or our caselaw, it has been compared to the discretion the Supreme Court enjoys when reviewing petitions for certiorari. *In re Convertible Rowing Exerciser Patent Litig.*, 903 F.2d 822, 822 (Fed. Cir. 1990). For example, this court may decline to exercise jurisdiction for reasons having little to do with the appeal itself, such as docket congestion. *Coopers*, 437 U.S. at 475. Indeed, it need not offer any reason at all. 16 Wright & Miller, *Federal Practice and Procedure* § 3929 (3d ed. 1998) ("[P]ermission might be denied without specifying reasons . . . ."). Similarly, nothing precludes this court from declining to assert jurisdiction after oral arguments. *Molybdenum Corp. of Am. v. Kasey*, 279 F.2d 216, 217 (9th Cir. 1960) (per curiam). Or from hearing some of the issues, but not others—including refusing to decide the question that provided the basis for certification. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 203–04 (1996). Thus, even when this court has interlocutory jurisdiction, it is free to decline to hear some or all the issues the parties raise on appeal.

2

Taking the foregoing into consideration, we must conclude that the question that ILWU relies on is a question of fact, not "of law." *See* 28 U.S.C. § 1292(b). As is evident from the plain text of § 1292(b), for a question to confer

interlocutory jurisdiction on this court it must be a "question of law." *Id.*; *see also Walcher & Fox*, 270 F.3d at 1023; *Clark-Dietz*, 702 F.2d at 69; Wright & Miller § 3930. The dispute between the parties is not about whether primary— as opposed to secondary—employers can recover damages for violation of § 158(b)(4)(B) (a question of law); rather the dispute is about whether ICTSI became a primary employer under the circumstances of this case (a question of fact). Ruling on this issue, the district court primarily relied on facts from the record. So did ILWU's analysis in its opening and reply briefs and ICTSI's in its answer.

Indeed, such question does not present a substantial ground for disagreement as to the question of law. As we have explained, "[c]ourts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Couch*, 611 F.3d at 633. That is not the case here, and ILWU does not argue otherwise. Such question, therefore, does not satisfy the requirements of § 1292(b) and cannot be the basis for jurisdiction in this Court.

## B

ILWU also contends that there is another basis for jurisdiction: the separate question of whether the district court "correctly interpreted *Mead*" when it assigned ILWU the burdens of proving apportionment and divisibility of damages.

The district court acknowledged and the parties do not dispute that the *Mead* question is not addressed in the four corners of the certified order. In that order, the district court

did not revisit its pre-trial rulings allocating the burdens of proof in view of *Mead*. As the court acknowledged, "[t]he two citations to *Mead* in the Post-Trial Opinion are not related to the Court's interpretation of *Mead* currently challenged by ILWU related to . . . divisibility and apportionment of damages." Nor did ILWU challenge those rulings in its post-trial motions.

ILWU, however, argues that we may reach the *Mead* issue under *In re Cinematronics*, 916 F.2d 1444 (9th Cir. 1990) and *Canela v. Costco Wholesale*, 971 F.3d 845 (9th Cir. 2020). The narrow issue before us is, then, whether a question not decided within the four corners of the certified order can confer jurisdiction on this court over such order.

1

When this court concludes that the question identified by the district court satisfies the requirements of § 1292(b), we have jurisdiction over *any* question within the four corners of the certified order—not just the identified controlling question. *Yamaha*, 516 U.S. at 205. Importantly, however, jurisdiction does not extend to other orders entered in the same case. *Id.* ("The court of appeals may not reach beyond the certified order to address other orders made in the case."); *Deutsche Bank v. FDIC*, 744 F.3d 1124, 1134–35 (9th Cir. 2014) ("In keeping with the letter and spirit of § 1292(b), our precedent, and Supreme Court guidance, we limit the scope of this appeal to the certified order and decline to reach any issues that are not encompassed within the certified order issued by the district court.").

We have recognized an exception to the statute's jurisdictional ambit: our interlocutory jurisdiction extends to a question outside the order when such question is "material" to the certified order. *Cinematronics*, 916 F.2d at 1449.

*Cinematronics* concerned a bankruptcy proceeding. *Id.* at 1446–47. In a first order, the bankruptcy court held that the claims before it were part of the "core bankruptcy proceedings" and, thus, it could issue "a final and binding judgment." *Id.* at 1447. It also found that the litigants had a right to jury trial on those claims. *Id.* However, it doubted that it had the authority to conduct a jury trial and asked the district court to do it instead. *Id.* In a second order, the district court found "that bankruptcy courts have authority to conduct jury trials in core proceedings." *Id.* at 1448. It did not, however, revisit the bankruptcy court's holding that the claims were part of core proceedings. *Id.* The district court then certified its order for interlocutory appeal to this court. *Id.*

We held that we had jurisdiction under § 1292(b) to review the bankruptcy court's conclusion that the claims were part of the core proceedings even though that holding was not part of the order certified by the district court. *Id.* at 1449. We observed that "the validity of the district court's decision . . . is inextricably tied to the bankruptcy judge's earlier ruling that . . . [the] claims constitute core bankruptcy proceedings." *Id.* The court summarized its reading of § 1292(b) by noting that in "a situation[] where reconsideration of a ruling material to an order provides grounds for reversal of the *entire* order," this court may address issues outside the four corners of the properly certified order. *Id.* (emphasis added).

Relying on *Cinematronics*, this court also reached outside the certified order in *Canela*. In that case, the district court decided, in a first order, that it had subject matter jurisdiction over the lawsuit. *Id.* at 848. In a second order, it denied Costco's motion for partial summary judgment on the issue of whether Canela had Article III standing to pursue

some of its claims. *Id.* The district court then certified the second order for interlocutory appeal after determining that the standing question passed the § 1292(b) test. *Canela v. Costco Wholesale Corp.*, No. 13-CV-03598-BLF, 2018 WL 3008532, at *1–3 (N.D. Cal. June 15, 2018). On appeal, this court concluded that it had jurisdiction to review the district court's jurisdictional ruling, made in the first order. *Canela*, 917 F.3d at 849. "Because the district court's subject matter jurisdiction is '*material*' to the summary judgment before us, we address it here," the court noted. *Id.* (quoting *Cinematronics*, 916 F.2d at 1449). This conclusion was consistent with *Cinematronics* because, just as in that case, reversing the district court's subject matter jurisdiction decision would have nullified the certified order. *Cinematronics*, 916 F.2d at 1449.

Thus, *Cinematronics* and *Canela* allow panels to assert interlocutory jurisdiction over issues not included in the four corners of the properly certified order when such issues are "material" to such order. *Id.*

2

However, the posture of this interlocutory appeal is unlike those of the appeals in *Cinematronics* and *Canela*. In those cases, as discussed above, the district court identified questions that properly satisfied the requirements of § 1292(b) within the four corners of the certified orders. For example, in *Cinematronics*, the district court certified the order based on the question of whether "bankruptcy courts have authority to conduct jury trials in core proceedings." *Cinematronics*, 916 F.2d at 1448. Similarly, in *Canela*, the controlling question in the order was whether Canela had Article III standing. *Canela*, 2018 WL 3008532, at *1–3. Once this court had jurisdiction to "permit an appeal to be taken from such order," 28 U.S.C. § 1292(b), based on those

questions, it was able to *extend* its interlocutory jurisdiction to the bankruptcy court's determination that the "claims constitute[d] core bankruptcy proceedings," *Cinematronics*, 916 F.2d at 1449, and to the district court's conclusion that it had subject matter jurisdiction, *Canela*, 971 F.3d at 849.

Here, by contrast, the only question in the four corners of the certified order that purportedly satisfies § 1292(b) is the "secondary employer" question. As discussed above, that question fails because it is not a question of law. Thus, unlike in *Cinematronics* and *Canela*, we cannot establish jurisdiction over the certified post-trial order. It follows that we cannot extend that jurisdiction to the *Mead* issue decided in the pre-trial ruling. The two precedents ILWU is relying on are, therefore, inapplicable here.

Accordingly, we lack jurisdiction under § 1292(b) to consider this question. In light of our disposition, the parties will have to continue their litigation in the district court, at least for now.

## III

The appeals are **DISMISSED** for lack of jurisdiction. [1,2]

---

[1] Even assuming we had jurisdiction, we would be inclined to exercise our discretion not to hear this case as the issues raised by the parties are factual, focusing on damages rather than liability. *Cf. Coopers*, 437 U.S. at 475.

[2] PMA's motion for leave to file an *amicus curiae* brief in support of ILWU is **GRANTED**.