**Michael J. ROSSI, dba Internet Movies.Com, Plaintiff–Appellant,**

**v.**

**MOTION PICTURE ASSOCIATION OF AMERICA INC.; et al., Defendants–Appellees.**

No. 03–16034.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 2004.

Filed Dec. 1, 2004.

James H. Fosbinder, Fosbinder & Fosbinder, A Law Corporation, Kahului, Hawaii, for the plaintiff-appellant.

Russell J. Frackman and Elena Segal, Mitchell Silberberg & Knupp, LLP, Los Angeles, California, and Paul Maki, a Law Corporation, Honolulu, Hawaii, for the defendant-appellee.

Steven A. Marenberg, Irell & Manella, LLP, Los Angeles, California, for amici curiae American Federation of Musicians of the United States and Canada, et al.

James J. Halpert, Piper Rudnick, LLP, Washington, D.C., for amici curiae NetCoalition and Internet Commerce Coalition.

Before: FARRIS, NOONAN, and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge:

We agree that no material issue of fact was raised regarding the Motion Picture Association of America's (MPAA) "good faith belief" that Rossi was infringing upon copyrighted materials. Because the MPAA's actions, compliant with the notice and takedown provisions of the Digital Millennium Copyright Act of 1998 (DMCA), 17 U.S.C. § 512, constitute "justification," were privileged and were not unreasonable, we affirm the district court's summary judgment in favor of the MPAA.

## I.

### BACKGROUND

Michael J. Rossi has owned and operated the "internetmovies.com" website since

istrate judge.

1997. Rossi described his website as an "online magazine" that provided visitors with a directory of websites containing information about movies. Beginning January, 2001, Rossi offered memberships to visitors to his website.

The MPAA is a trade association that works to prevent unauthorized copying, transmittal, or other distribution of the movie studios' motion pictures. An MPAA member became aware of Rossi's website and notified the MPAA. A subsequent examination of Rossi's website revealed the following contents: "Join to download full length movies online now! new movies every month"; "Full Length Downloadable Movies"; and "NOW DOWNLOADABLE." These statements were followed by graphics for a number of the MPAA's copyrighted motion pictures. After viewing the website, the MPAA believed that Rossi was illegally infringing on its copyrighted materials.[2] The MPAA followed the "notice and takedown" procedures detailed in the DMCA[3] and sent several notices to Rossi and Rossi's Internet service provider (ISP) informing them of the asserted infringement.

After receiving notice from his ISP that his website would be shut down, Rossi found a new ISP to host internetmovies.com. According to Rossi, internetmovies.com was offline for "[a]pproximately 1 second to 72 hours," and the amount of money he lost due to the website's shutdown was "unmeasureable."

Rossi filed this diversity action asserting the following claims: 1) tortious interference with contractual relations; 2) tortious interference with prospective economic advantage; 3) libel and defamation; and 4) intentional infliction of emotional distress.

The MPAA filed a motion for summary judgment, which the district court granted. *Rossi v. Motion Picture Ass'n of America, Inc.*, 2003 WL 21511750 (D.Haw.2003). The court held that the MPAA "had more than a sufficient basis to form the required good faith belief that[Rossi's] site contained infringing content prior to asking [the ISP] to shut down the site." *Id.* at *3. Since Rossi did not "raise a genuine issue of material fact with regard to [the MPAA's] compliance with the DMCA," the court granted the MPAA's motion for summary judgment on the tortious interference with contractual relations and the tortious interference with prospective economic advantage claims. *Id.* at *4. In disposing of the defamation claim, the court held that the MPAA's statements to Rossi's ISP "were a privileged publication." *Id.* Finally, the court granted summary judgment in favor of MPAA on the intentional infliction of emotional distress (IIED) claim. *Id.* at *5. The court found, as a matter of law, that the MPAA's notices to Rossi's ISP were "justified and reasonable" and therefore not outrageous. *Id.*

## II.

### *STANDARDS OF REVIEW*

We review a district court's grant of summary judgment *de novo*. *Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir.2004). "Viewing the evidence in the light most favorable to the non-moving party," we "must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (citation omitted). We review *de novo* the district

---

**2.** The MPAA's initial investigation did not include an actual attempt to download any movies from Rossi's website or any of the website's accompanying links.

**3.** *See* 17 U.S.C. § 512(c)(3)(A).

court's interpretations of the Copyright Act. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004).

### III.

### *DISCUSSION*

**A. "Good Faith Belief" under § 512(c)(3)(A)(v)**

█ Title II of the DMCA contains a number of measures designed to enlist the cooperation of Internet and other online service providers to combat ongoing copyright infringement. *See* 17 U.S.C. § 512. "Title II preserves strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment." H.R. Rep. 105–551, pt. 2, at 49 (1998). Title II also was intended to "balance the need for rapid response to potential infringement with the end-users [sic] legitimate interests in not having material removed without recourse." Sen. Rep. No. 105–190 at 21 (1998). When a copyright owner suspects his copyright is being infringed, he must follow the notice and takedown provisions set forth in § 512(c)(3) of the DMCA, which provide in part:

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party *has a good faith belief* that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

17 U.S.C. § 512(c) (emphasis added).

Rossi does not dispute that the MPAA complied with the notice and takedown provisions set forth in § 512(c)(3)(A)(i)-(iv). Rather, Rossi contends that the MPAA did not have sufficient information to form a "good faith belief" under § 512(c)(3)(A)(v) that Rossi was illegally infringing the MPAA's copyrights. Rossi urges us to adopt a rule that in order to have "a good faith belief" of infringement, the copyright owner is required to conduct a reasonable investigation into the allegedly offending website.

It is undisputed that MPAA did not attempt to download any movies from Rossi's website or any links to the site. Rossi contends that if MPAA had reasonably investigated the site by attempting to download movies, it would have been apparent that no movies could actually be downloaded from his website or related links. Rossi contends that if the MPAA had conducted such an investigation, it would have inevitably concluded that Rossi's website could not possibly have been providing a source for downloading movies.

In short, Rossi's interpretation of the "good faith belief" requirement would impose an objective standard of review for gauging the reasonableness of the MPAA's conduct in notifying Rossi and his ISP of the allegedly infringing website.

MPAA counters that the "good faith belief" requirement is a subjective one. In support of its argument, the MPAA directs us to cases interpreting "good faith" as encompassing a subjective standard. MPAA also notes that Congress could have, but did not, expressly import a specific objective standard or reasonable investigation requirement into § 512(c)(3)(A)(v).

Rossi's contention notwithstanding, interpretive case law and the statutory structure of § 512(c) support the conclusion that the "good faith belief" requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than objective, standard.[4] Although no federal court has yet interpreted the meaning of "a good faith belief" within the context of § 512(c), courts interpreting other federal statutes have traditionally interpreted "good faith" to encompass a subjective standard. *See e.g. Alvarez v. IBP, Inc.,* 339 F.3d 894, 910 (9th Cir.2003) ("[t]o satisfy [29 U.S.C.] § 260, a FLSA-liable employer bears the difficult burden of proving both subjective good faith and objective reasonableness") (citations omitted); *see also Austin v. McNamara,* 979 F.2d 728, 734 (9th Cir. 1992) ("The legislative history of [42 U.S.C.] § 11112(a) indicates that its reasonableness requirements were intended to create an objective standard, *rather*

*than* a subjective good faith standard.") (emphasis added); *Brooks v. Village of Ridgefield Park,* 185 F.3d 130, 137 (3rd Cir.1999) ("The good faith requirement is a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the [Fair Labor Standards] Act. The reasonableness requirement imposes an objective standard by which to judge the employer's conduct.") (alterations and internal quotation marks omitted). These cases demonstrate that the objective reasonableness standard is distinct from the subjective good faith standard, and that Congress understands this distinction. When enacting the DMCA, Congress could have easily incorporated an objective standard of reasonableness. The fact that it did not do so indicates an intent to adhere to the subjective standard traditionally associated with a good faith requirement.[5]

The overall structure of § 512 also supports the conclusion that § 512(c)(3)(A)(v) imposes a subjective good faith requirement upon copyright owners. *See Wilderness Soc'y v. United States Fish and Wildlife Serv.,* 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc), *amended by* 360 F.3d 1374 (9th Cir.2004) ("[I]t is also a fundamental canon[of statutory construction] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (citation and internal quotation marks omitted). In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is

---

4. We are mindful of the "well-established rule of construction that where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Neder v.*

*United States,* 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (alterations, citations, and internal quotation marks omitted).

5. "Good faith" is "[a] state of mind consisting [of] ... honesty in belief or purpose." *Black's Law Dictionary,* 701 (7th ed.1999).

a knowing misrepresentation.[6] A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. *See* § 512(f). Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner. *Id.*

Juxtaposing the "good faith" proviso of the DMCA with the "knowing misrepresentation" provision of that same statute reveals an apparent statutory structure that predicated the imposition of liability upon copyright owners only for knowing misrepresentations regarding allegedly infringing websites. Measuring compliance with a lesser "objective reasonableness" standard would be inconsistent with Congress's apparent intent that the statute protect potential violators from *subjectively* improper actions by copyright owners.

Applying the subjective good faith standard of § 512(c) and viewing the record in the light most favorable to Rossi, Rossi failed to raise a genuine issue of material fact regarding MPAA's violation of the DMCA. In reaching this conclusion, we examine: 1) the information residing on Rossi's website, and 2) MPAA's actions in response to the discovery of that information.

After one of the MPAA's member companies notified the MPAA's anti-piracy department of possible infringements on internetmovies.com, an MPAA employee reviewed the website.[7] The website contained statements that included "Join to download full length movies online now! new movies every month"; "Full Length Downloadable Movies"; and "NOW DOWNLOADABLE." These representations on the website led the MPAA employee to conclude in good faith that motion pictures owned by MPAA members were available for immediate downloading from the website.[8] The unequivocal language used by Rossi not only suggests that conclusion, but virtually compels it. As the district court noted, "[t]here is little question that these statements strongly suggest, if not expressly state, that movies were available for downloading from the site." *Rossi*, 2003 WL at *3. In fact, Rossi even admitted that his own customers often believed that actual movies were available for downloading on his website.

Accordingly, Rossi has failed to raise a triable issue of fact as to whether the

---

**6.** 17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially misrepresents ... that material or activity is infringing ... shall be liable for any damages ... incurred by the alleged infringer ... who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing."

**7.** Many anti-piracy departments use the "Ranger" program to detect websites containing potentially infringing material. Amici Curiae Net–Coalition and Internet Commerce Coalition contend that computers conducting automated searches cannot form a belief consistent with the language of the DMCA, because they cannot distinguish between infringing content and content that merely contains words that suggest infringement. Although the MPAA admitted that it relies heavily on "Ranger" to locate infringing websites, internetmovies.com was located and examined using human review. Even though the MPAA uses the "Ranger" program to initially identify potentially infringing websites, the MPAA employs three to four employees who actually review the identified sites. It is these employees, rather than "Ranger," who ultimately decide whether a website contains infringing material.

**8.** There is no suggestion in the record that MPAA's belief regarding Rossi's asserted infringement was other than sincere.

MPAA complied with the notice and take-down procedures set forth in § 512 of the DMCA. Given the explicit nature of the statements on Rossi's website, the district court properly found that no issue of material fact existed as to MPAA's "good faith belief" that Rossi's website was infringing upon its copyrighted materials.

## B. *State Tort Claims*

Rossi's action in the district court asserted four state law torts; 1) tortious interference with contractual relations, 2) tortious interference with prospective economic advantage, 3) libel and defamation, and 4) intentional infliction of emotional distress (IIED). Because there is no genuine issue of material fact as to any of these claims, each must fail.

 To establish a claim for tortious interference with contractual relations, Rossi must prove "the absence of justification on the defendant's part ..." *Lee v. Aiu*, 85 Hawai'i 19, 936 P.2d 655, 668 (1997). Rossi must also establish the absence of justification to prevail on his intentional interference with prospective economic advantage claim. *See Kutcher v. Zimmerman*, 87 Hawai'i 394, 957 P.2d 1076, 1087 n. 15 (1998) (recognizing the tort of interference with prospective contractual relations as "a sub-species of the broader tort of interference with prospective economic advantage."). The MPAA's compliance with the notice and takedown procedures detailed in the DMCA, based on a "good faith belief" that Rossi's web-

site was infringing on its copyrighted material, meet Hawaii's standards for "justification." *See id.* at 1088–90 (announcing standards).[9] The MPAA complied with its statutory obligations, its actions were apparently sincere and proper in means and purpose, and without further evidence of impropriety, we must find the MPAA's actions justified under the circumstances. *See id.* at 1089 (discussing indicia of impropriety, including violations of statutes).[10] As a result, Rossi's interference claims fail as a matter of law.

 Rossi's defamation claim suffers a similar fate. An otherwise defamatory statement is not actionable if "the author of a defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social and ... the publication concerns a subject matter in which the author and the recipients of the publication have a correlative interest or duty." *Kainz v. Lussier*, 4 Haw.App. 400, 667 P.2d 797, 801 (1983) (citations omitted). This defense to defamation is a qualified privilege that is applicable only if it is demonstrated that "the publisher and recipient have a common interest and ... the communication is of a kind reasonably calculated to protect or further such interest." *Id.* at 405, 667 P.2d 797 (citation omitted). Here, the MPAA (the publisher) and Rossi's ISP (the recipient) shared an interest in preventing the violation of copyright laws. As discussed above, the MPAA exercised its statutory rights and acted reasonably in communicating with

9. The element of "justification" is functionally equivalent for both tortious interference with contractual relations and tortious interference with prospective economic advantage. *See Kutcher*, 957 P.2d at 1087 n. 15.

10. We do not interpret Hawaii law to state that compliance with statutes precludes a finding of lack of justification; only that the actions in this case were justified.

Rossi's ISP about the allegedly infringing material on internetmovies.com. Accordingly, the MPAA's statements to Rossi's ISP were privileged.

■ Finally, in order to establish a claim for IIED, Rossi must prove that the MPAA's communications were "unreasonable or outrageous." *Lee*, 936 P.2d at 670 (alteration omitted). "An act is unreasonable if it is without just cause or excuse and beyond all bounds of decency." *Shoppe v. Gucci America, Inc.*, 94 Hawai'i 368, 14 P.3d 1049, 1068 (Haw.2000) (citations, internal quotation marks and emphasis omitted). The record reflects that the MPAA's actions were certainly not beyond all bounds of decency in communicating with Rossi and Rossi's ISP. Thus, the IIED claim must fail.

## III.

## CONCLUSION

When considered in the context of informative case authority, the statutory structure of § 512(c) supports the conclusion that the "good faith belief" requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than objective, standard of conduct. Applying this subjective good faith standard and viewing the record in the light most favorable to Rossi reflects the absence of a genuine issue of material fact regarding MPAA's violation of the DMCA. Because the MPAA acted in compliance with the DMCA and was otherwise justified in its response to Rossi's website, Rossi's tortious interference claims must fail. Because the MPAA's communications were privileged and were well within the bounds of decency, his defamation and intentional infliction of emotional distress claims must fail as well. The district court

properly entered judgment in favor of the MPAA.

AFFIRMED.